IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-206-FL

| | |
|---|---|
| JOY G. JONES, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-29, DE-31] pursuant to Fed. R. Civ. P. 12(c). Claimant Joy G. Jones ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 7 May 2007, alleging disability beginning 1 December 2005. (R. 17). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on

7 October 2009, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 28-61). On 16 November 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 14-27). On 21 April 2011, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla ... and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

# DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into her written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of a

3

physician assistant's opinion; (2) failure to consider Claimant's hypoglycemia[1] at step two of the sequential evaluation; (3) improper assessment of Claimant's credibility; and (4) failure to pose a hypothetical that adequately reflected Claimant's RFC.[2] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 11-13, 18. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: diabetes mellitus, gastrointestinal ("GI") difficulties and depressive disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living and social functioning, moderate difficulties with concentration, persistence and pace and no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

---

[1] Hypoglycemia is "an abnormally diminished concentration of glucose in the blood . . . ." Dorland's Illustrated Medical Dictionary ("Dorland's") at 806 (28th ed. 1994).

[2] The court identifies and discusses the alleged assignments of error pursuant to the sequential evaluation process and not as presented by Claimant.

4

ability to perform medium work[3] requiring only simple, routine and repetitive tasks and occasional climbing of ladders and no concentrated exposure to hazards. (R. 20). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 21).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 25). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 45 years old and unemployed. (R. 32). Claimant is a college graduate. *Id.* Claimant was last employed as a human resource manager. *Id.* Claimant testified that the job was "eliminated" because she spent so much time "in the bathroom with diarrhea." (R. 35).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include depression, diabetes and illnesses attributed thereto including neuropathy of the intestines, irritable bowel syndrome, hypoglycemia and diabetic retinopathy. (R. 36-38, 46-47). Claimant experiences diarrhea and vomiting, symptoms of her diabetes and its related illnesses, often and without forewarning. In particular, she testified to experiencing diarrhea "at least" ten times a day and to vomiting "several times a week." (R. 39). Claimant testified treatment for these symptoms has been completely ineffective. (R. 40). Claimant

---

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

5

testified that her hypoglycemic episodes occur without warning. (R. 41). Claimant underwent surgery in both eyes in 2006. (R. 46). Claimant takes Prozac and another unspecified medication for her GI issues and also takes Prozac for bulimia and depression. (R. 48). Claimant testified, however, that her medications have been ineffective in controlling her GI symptoms.

As a result of Claimant's eye problems, she can only read or use a computer for "[thirty] minutes to an hour" before experiencing a headache. (R. 47). Claimant testified that as a result of her depression and GI problems, she goes up to two weeks without leaving her home. (R. 48-49). Claimant's mother visits daily to ensure Claimant is "not unconscious" as a result of low blood sugar. (R. 50). Claimant advised she was last unconscious approximately four weeks prior to the hearing. *Id.* Claimant cares for her dog and cat and does her own laundry; however, Claimant's mother handles the bills. (R. 52). Claimant spends the majority of her day watching television while laying in bed. (R. 51). Claimant testified to not bathing or showering in the week prior to the hearing. (R. 49, 51).

### III. Vocational Expert's Testimony at the Administrative Hearing

Cora Etta Harrelson testified as a VE at the administrative hearing. (R. 52). After the VE's testimony regarding Claimant's past work experience (R. 53), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed three hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform medium work involving simple, routine and repetitive tasks with nonexertional limitations that include no more than occasional climbing and no working in environments subject to concentrated exposure to hazards. (R. 54). The VE responded in the negative but testified the individual could perform the

following alternative positions: (1) linen clerk (DOT #222.387-030); (2) parts and order picker (DOT #922.686-058); (3) packaging line attendant (DOT #920.587-018). (R. 54). Second, the ALJ asked the VE to assume the same facts as above with an exertional limitation of light work only. (R. 55). The VE responded that the hypothetical individual could perform the following positions: (1) folding machine operator (DOT #208.685-014); (2) sealing and canceling machine operator (DOT #208.685-026); and (3) mall clerk (DOT #209.687-026). *Id.* Finally, the ALJ asked the VE to assume the same facts as in hypothetical two with the included limitations of requiring "very close access to the bathroom," up to ten unscheduled breaks related to chronic diarrhea and the ability to leave work early two to three times a month due to nausea. (R. 55-56). The VE testified that no jobs would be available. (R. 56). In response to questioning from Claimant's counsel, the VE explained that even two unscheduled breaks during the day would be considered excessive. (R. 58).

## DISCUSSION

### I. The ALJ's consideration of a physician assistant's opinion is not supported by substantial evidence.

Claimant contends the ALJ's reasons for rejecting the opinion of Danielle Maier, a physician's assistant ("PA"), is not supported by substantial evidence. Pl.'s Mem. at 13.

Pursuant to the regulations, a physician assistant is not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licenced optometrists, licensed podiatrists, and qualified speech-language pathologists). Nonetheless, "evidence from other sources," such as physician assistants, may be used "to show the severity of [a claimant's] impairment(s) and how it affects [her] ability to" engage in work-related activities. *Id.* §§ 404.1513(d), 416.913(d); *see also*

7

S.S.R. 06-03p, 2006 SSR LEXIS 5, at *5, 2006 WL 2329939, at *2 (explaining the opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment and how it affects [a claimant's] ability to function"). Since "other sources" such as physicians assistants "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians," their "[o]pinions . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 SSR LEXIS 5, at *8, 2006 WL 2329939, at *3. Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.*

In a letter dated 14 June 2007, Maier discussed Claimant's "gastrointestinal issues related to severe and chronic nausea, vomiting, diarrhea and abdominal pain." (R. 204).[4] She explained Claimant is unable to "keep down most meals" which in turn affects Claimant's ability to control her glucose and that as a result of "chronic diarrhea," Claimant "must be near a bathroom at all times." *Id.* Maier concluded that as a result of Claimant's "multiple medical issues, in addition to her GI symptoms," Claimant is unable to work. *Id.*; (R. 22). The ALJ accorded Maier's opinion "little weight," explaining as follows:

> [Claimant's] A1c readings are stable and her treating physician's notes indicate that her diabetes was well controlled. Most of the treating physician notes do not reflect the reported episodes of hypoglycemia. If the claimant were having such difficulties controlling her diabetes, one would expect to see much more aggressive treatment. In addition, the claimant's weight has consistently been around 150 to 160 pounds with no evidence of malnutrition or need for supplements. She has not required hospitalization for dehydration, or other symptoms, often related to chronic vomiting

---

[4] A duplicate of Ms. Maier's letter appears at R. 406.

8

and diarrhea. The claimant's most recent medication list does not reflect any
prescriptions for gastrointestinal difficulties. The claimant's objective gastrointestinal
tests were normal.

(R. 24).

The evidence relied upon by the ALJ in weighing Dr. Maier's opinion included treatment records by John Buse, M.D., Claimant's treating physician, and Yehuda Ringel, M.D., Claimant's gastroenterologist and the physician for whom Maier works as a PA, and a physical RFC assessment by E. Woods, M.D., a state agency non-examining consultant. With respect to Dr. Buse, the ALJ noted his records indicate Claimant has well-controlled type 1 diabetes mellitus and that Claimant generally denied any complaints or concerns upon examination. (R. 22, 230, 411, 419, 427, 435-36, 444). The ALJ observed that in a 21 May 2008 treatment record, Dr. Buse noted Claimant had an elevated liver function test and remarked that her "alcohol intake [was] a bit on the heavy side for [a] woman of her size."[5] (R. 22, 437, 442). The ALJ acknowledged that Claimant had been treated for recurrent episodes of severe and asymptomatic hypoglycemia. (R. 22, 206, 218, 411, 419, 427, 435, 437, 444). In a 11 May 2009 treatment note, the most recent record, Dr. Buse noted that Claimant had not experienced a severe episode in three months. (R. 22, 411). The ALJ also noted that Claimant's A1c readings – "a test for control of glucose"[6] – were stable.[7] *See Coffindaffer v.*

---

[5] The ALJ noted also that Thomas Marsland, M.D., the physician who conducted the liver function tests, had expressed concern over Claimant's ingestion of three to four glasses of wine every night. (R. 22, 442).

[6] "The A1C test is the primary test used for diabetes management." National Institutes of Health, *The A1C Test and Diabetes*, http://diabetes.niddk.nih.gov/dm/pubs/A1CTest/A1C_Test_DM_508.pdf (last visited 18 April 2012). As one court recently explained,

> The A1C test is a common blood test used to diagnose type 1 and type 2 diabetes and

9

*Astrue*, No. 2:08-CV-940, 2009 U.S. Dist. LEXIS 77912, at *31, 2009 WL 2762365, at *12 (S.D. W. Va. Aug. 5, 2009).

In summarizing Dr. Ringel's treatment records, the ALJ noted Dr. Ringel had been treating Claimant for complaints of multiple episodes of diarrhea in a day's time and episodes of vomiting almost on a daily basis without warning or symptoms of nausea. (R. 22, 209,[8] 215, 221, 413, 416, 438). The ALJ noted also that in 2008, "gastric emptying was done and was considered normal." (R. 22, 414, 439). On 5 March 2009, Claimant underwent a colonoscopy and an esophagogastroduodenoscopy ("EGD")[9] and pathology results from the duodenum showed no significant pathological abnormality and random biopsies from the colon showed no significant pathological abnormalities. (R. 22, 414). The ALJ noted further that Claimant had been taking Reglan for her GI symptoms and had reported improvement with respect to her vomiting symptoms.

---

then to gauge how well a patient is managing his diabetes. The A1C test result reflects the average blood sugar level for the past two to three months. Specifically, the A1C test measures what percentage of hemoglobin – a protein in red blood cells that carries oxygen – is coated with sugar (glycated). The higher the A1C level, the poorer the blood sugar control.

*Tate v. Astrue*, No. 11-3095-CV-S-REL-SSA, __ F. Supp. 2d __, 2012 U.S. Dist. LEXIS 21357, at *20 n.15, 2012 WL 566779, at *7 (W.D. Mo. Feb. 21, 2012). "In poorly controlled diabetes, [the A1C level is] 8.0% or above, and in well controlled patients it's less than 7.0%." Ruchi Mathur, M.D., *Hemoglobin A1c Test*, http://www.medicinenet.com/hemoglobin_a1c_test/article.htm (last visited 18 April 2012).

[7] As the ALJ noted, Claimant's A1c readings have ranged from 5.9% to 6.7%. (R. 22); *see e.g.*, (R. 218, 205, 215, 218, 411-12, 419, 427).

[8] A duplicate of R. 209 is found at R. 212.

[9] An EGD or upper endoscopy is "a procedure . . . to examine the esophagus (the swallowing tube), stomach, and duodenum (the first portion of small bowel)." *Rasmussen v. Astrue*, No. 10-C-2344, 2011 U.S. Dist. LEXIS 48988, at *13 n.7, 2011 WL 1807019, at *4 (N.D. Ill. May 6, 2011) (citing www.medterms.com); *accord* Dorland's at 581.

(R. 22, 439). Finally, the ALJ acknowledged Dr. Ringel's latest medical record dated 1 April 2009, wherein Dr. Ringel indicated that Claimant was "not doing significantly better on current treatment," suggested a different form of treatment that "may help both slowing down her motility and improve her symptoms of diarrhea and [] vomiting," and stated a Hydrogen Breath Test ("HBT") for small bowel bacterial overgrowth would be performed. (R. 22, 414). Dr. Ringel explained that repeating the bacterial test would allow her to determine whether Claimant "would gain from treatment with antibiotics. Together with the negative endoscopy results, I believe that if these additional tests will be negative we should conclude and address her symptoms as functional[ly] related to motility disorders associated with her diabetes." (R. 414). The ALJ's consideration of Dr. Ringel's record, however, was limited to erroneously stating that Dr. Ringel had definitively determined that "Claimant's symptoms are functionally related to motility disorders associated with her diabetes."[10] (R. 22).

With respect to Dr. Woods' opinion, which the ALJ "adopted," the ALJ noted it took "into account the objective medical evidence." (R. 22, 343-50). In particular, Dr. Woods' opinion summarized numerous medical records from 2007 by Drs. Buse and Ringel. These records indicate similar treatment and concerns as the 2008 and 2009 records that were discussed by the ALJ. For example, the 2007 records indicate Claimant's diabetes was well-controlled, she experienced episodes of hypoglycemia, and while experiencing some improvement regarding her GI symptoms, she continued to experience nausea, vomiting and diarrhea with "urgency." (R. 208-09, 217-24, 282, 345, 350). Dr. Woods' summary also noted that Claimant underwent a HBT on 6 April 2007, which

---

[10] It is not evident to the court that the ALJ's summary was a substantive misreading of the record. In fact, neither Claimant nor Defendant acknowledges it.

11

showed evidence of lactose intolerance.[11] (R. 221, 233, 350)

Claimant contends the ALJ's reasons for rejecting Maier's opinion are not supported by substantial evidence.[12] First, Claimant contends the ALJ's remark regarding Claimant's A1c readings "do not address Maier's opinion" and suggests the ALJ's reliance thereon was a misplaced attempt to "refute [Claimant's] complaints of diarrhea and vomiting." Pl.'s Mem. at 14. Claimant's contention is belied by Maier's statement that Claimant's ability to control her glucose levels is affected by the inability to "keep down most meals." (R. 204). In considering this statement, the ALJ properly relied on records indicating Claimant's A1c readings were stable. (R. 22). Such data directly contradicts Maier's statement that as a result of Claimant's GI impairments, Claimant's glucose levels were not controlled.

Second, Claimant takes issue with the ALJ's statement that more aggressive treatment would be expected if Claimant's diabetes was not well-controlled. *See* Pl.'s Mem. at 16. In particular, Claimant contends "[t]he ALJ, a layman, does not tell us how she knows what 'aggressive treatment' consists of in this context" and in making such a statement, the ALJ "play[ed] doctor." *Id.* Claimant interprets this statement as a finding by the ALJ that Claimant's diarrhea was well-controlled. *Id.* at 16-17. An ALJ is entitled to consider the type of treatment a Claimant receives in rendering a disability decision. *See Clark v. Comm'r of Soc. Sec.*, No. 2:09-CV-417, 2010 U.S. Dist. LEXIS

---

[11]   The HBT also indicated Claimant tested positive for small bowel bacterial overgrowth; however, Dr. Woods summary does not include this test result. (R. 221, 235).

[12]   As discussed below, Defendant responds to only one argument posited by Claimant as to this assignment of error, relying on exhibits not cited by the ALJ and providing a rationale not mentioned by the ALJ. *See Shoulars v. Astrue*, 671 F. Supp. 2d 801, 818 (E.D.N.C. 2009) (explaining this court must "judge the propriety of the [ALJ's determination] solely by the grounds invoked by the [ALJ]") (alteration in original) (quoting *SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947) (noting a court may not substitute its own reasoning for that of the agency)).

12

69025, at *61, 2010 WL 2730622, at *11 (E.D. Va. June 3, 2010) (finding the ALJ properly relied on claimant's conservative treatment); *McCullough v. Astrue*, No. 9:08-2885-PMD-BM, 2009 U.S. Dist. LEXIS 124294, at *20 (D.S.C. Nov. 9, 2009) (citing *Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) ("[generally conservative treatment not consistent with allegations of disability]")). Nevertheless, to the extent the ALJ erred in commenting on the type of treatment without identifying what this treatment may have consisted of, such error is harmless. As explained above, it is evident the ALJ was taking issue with Maier's statement that Claimant had difficulty controlling her glucose as a result of her GI symptoms. Claimant does not dispute the ALJ's finding that Claimant's diabetes was well-controlled – a diagnosis provided in numerous treatment records by Dr. Buse and supported by Claimant's stable A1c readings. (R. 22, 218, 205, 215, 218, 230, 411-12, 419, 427, 435-36, 444).

Third, Claimant contends the ALJ improperly relied on Claimant's normal objective test results and on an October 2009 medication list in discounting Maier's opinion that Claimant suffers from GI difficulties. (R. 24, 171). With respect to the test results, Claimant contends the ALJ overlooked a December 2006 upper GI endoscopy that revealed chronic inflammation and a April 2007 "bacterial overgrowth HBT" and, arguing "in two ways, the ALJ's assertion of fact is shown to be clearly wrong." Pl.'s Mem. at 17; (R. 221, 235, 237). Given the ALJ correctly noted that objective testing performed in 2008 and 2009 revealed normal findings, (R. 22, 414, 439), it is clear Claimant is faulting the ALJ for her failure to discuss all evidence. The ALJ, however, is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination). Indeed,

13

"[t]o require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-*12, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009). Rather, the ALJ must "provide [this court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

As for the 2006 medical record, Claimant has failed to explain how the omission of this evidence within the ALJ's discussion is an omission of "obviously probative" evidence. *See White*, 2009 U.S. Dist. LEXIS 60309, at *11-*12, 2009 WL 2135081, at *4. The ALJ acknowledged claimant's 2009 EGD and Dr. Ringel's description thereof indicates no concerns regarding Claimant's esophagus. Claimant points to no records, and the court has found none, indicating how the 2006 finding affects Maier's opinion or Claimant's ability to work.

As for the April 2007 HBT evidence, Claimant correctly notes that the ALJ's discussion does not include acknowledgment of this test or the results thereof. However, the ALJ specifically acknowledged a 1 April 2009 treatment note by Dr. Ringel, wherein Dr. Ringel noted Claimant had previously tested positive for small bowel bacterial overgrowth and mentioned the possibility that Claimant's symptoms of diarrhea and vomiting may be functionally related to motility disorders associated with her diabetes. (R. 414). As noted earlier, the ALJ's summary of the record was limited to acknowledging the motility issue and erroneously stating that such a such a finding had been definitively made. (R. 22). Nevertheless, it is clear from Dr. Ringel's April 2009 motility statement that it was based on the outcome of a prospective second HBT for small bowel bacterial

14

growth. Claimant does not indicate whether this second examination was performed and the court can find no records by Dr. Ringel post-dating the April 2009 record indicating the test was performed. While some of Dr. Ringel's treatment records mention the April 2007 HBT results, these records provide no insight as to how this test result impacted Claimant's symptoms following treatment in 2007 for bacterial overgrowth or impacted Claimant's subsequent treatment for diarrhea. *See, e.g.*, (R. 417) (noting only that Claimant tested positive in the past for bacterial overgrowth and suggesting a follow-up test may be prudent); (R. 438) (noting in passing Claimant tested positive for bacterial overgrowth in the past "but has not been retreated since 2007"). Accordingly, it is unclear how the 2007 HBT result is obviously probative evidence.

With respect to the ALJ's reliance on Claimant's medication list as of October 2009, Claimant concedes the list does not include medications for GI symptoms. Pl.'s Mem. at 16. However, Claimant suggests this list is unreliable in light of her "cognitive deficits" and accordingly, the ALJ erred in failing to consider Claimant's medication usage as of April 2009 which included Robinul for diarrhea and Zofran for nausea. *Id.* at 17; (R. 414). The court observes Claimant's counsel specifically relied on the October 2009 medication list in questioning Claimant during the administrative hearing. *See* (R. 47) ("On your medication list that you sent in, *that we gave to the judge* . . . .") (emphasis added). "Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, . . . .[the ALJ] is not required to function as the claimant's substitute counsel . . . ." *Bell v. Chater*, No. 95-1089, 1995 U.S. App. LEXIS 14322, at *12, 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished table decision) (citing *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)) (internal citations and quotations omitted). Ultimately, Claimant carries the burden of establishing a *prima facie*

15

entitlement to benefits and bears the risk of nonpersuasion. *Id.* (internal citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1512(c), 416.912(c) ("[Claimant] must provide evidence . . . showing how the impairment(s) affects . . . functioning . . . ."). The court notes Claimant's counsel had an opportunity at the hearing to elicit further testimony regarding Claimant's medications, including inquiring as to any alleged inconsistency between the October 2009 medication list and other evidence of record, but failed to conduct an exchange with his client regarding her GI medications. It appears Claimant now seeks to fault the ALJ for a duty that should have been performed by Claimant's counsel; however, an ALJ is also entitled to assume that a claimant represented by counsel is making her strongest case for benefits. *See Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997). The court finds Claimant's argument disingenuous.

Fourth, Claimant faults the ALJ for her reliance on Claimant's ability to maintain a consistent weight and avoid hospitalization for dehydration or other symptoms related to chronic vomiting and diarrhea. Pl.'s Mem. at 16. In particular, Claimant contends the ALJ improperly substituted her own layman's opinion for that of a physician as the ALJ is not an expert on whether diarrhea causes malnutrition, weight loss or dehydration. *Id.* Defendant contends the ALJ's rationale was justified, arguing Maier simply relied on Claimant's own statements regarding her symptoms of diarrhea, vomiting and nausea as neither Maier nor Dr. Ringel "monitored [Claimant's] condition so closely as to observe how often she vomited or had diarrhea."[13] Def.'s Resp. at 18. The court notes,

---

[13] Defendant argues also that the ALJ is not to "give any special significance to the source of an opinion on issues reserved to the Commissioner." Def.'s Resp. at 16 (quoting 20 C.F.R. § 404.1527(e)(3)). While statements concerning an individual's inability to work are reserved to the Commissioner, such statements must nevertheless be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2 (explaining "our rules provide that adjudicators must always carefully consider

16

Case 5:11-cv-00206-FL Document 35 Filed 04/19/12 Page 16 of 18

however, that none of Claimant's treating sources expressed doubt over Claimant's symptoms. Rather, the evidence indicates Dr. Ringel believed Claimant but had not yet determined whether such symptoms were diabetes-related or related to small bowel bacterial growth. (R. 414). Furthermore, the ALJ cites no medical basis for her belief that Claimant's symptoms necessarily should lead to dehydration, malnutrition and weight loss. No such comments were made by Claimant's treating physicians who noted Claimant's complaints of diarrhea, nausea and vomiting on a consistent basis. *See, e.g.*, (R. 209, 214-15, 218, 221, 345, 350, 413, 416, 424, 438). It appears the ALJ simply indulged her own lay view of Claimant's symptoms. *See Wiggins v. Apfel*, 29 F. Supp. 2d 486, 492 (N.D. Ill. 1998) (explaining "[i]f an ALJ indulges his [or her] layman's view of a disorder in lieu of an expert opinion, the ALJ's decision lacks evidentiary support and must be returned to the Administration for further proceedings"). As the ALJ, without expressly relying on any medical evidence or authority, independently determined what the impact of Claimant's GI symptoms should be, the court cannot conclude that the ALJ's consideration of Maier's opinion is supported by substantial evidence. Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-29] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-31] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

---

medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner").

17

Case 5:11-cv-00206-FL   Document 35   Filed 04/19/12   Page 17 of 18

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 18th day of April, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge